NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0776n.06
Filed: September 2, 2005

No. 04-5572

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JEFFORY H. HALL, | ) |
| | ) |
| *Plaintiff-Appellant*, | ) |
| | ) |
| v. | ) On Appeal from the United States |
| | ) District Court for the Eastern |
| COMMISSIONER OF SOCIAL SECURITY, | ) District of Kentucky |
| | ) |
| *Defendant-Appellee*. | ) |

**Before:** **BOGGS, Chief Judge; BATCHELDER, Circuit Judge; and GADOLA, District Judge.**[*]

**BOGGS, Chief Judge.** Plaintiff appeals from a district court decision affirming the denial of his application for Social Security disability benefits. Under our holding in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), the Administrative Law Judge did not adequately explain his decision to reject an opinion of Hall's treating physician. We therefore reverse and remand.

**I**

---

[*]The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation.

Jeffory Hall has been seeking disability benefits for over a decade. This pursuit has spawned three administrative decisions, three district court opinions, and one administrative remand. This appeal concerns only the district court's decision affirming the most recent administrative action, an Administrative Law Judge's ("ALJ") opinion denying benefits filed on December 30, 2002 ("2002 decision"). J.A. 288-96.

Hall first applied for benefits in 1993, claiming an onset date of February 19, 1992. Following a hearing, his application was denied in an opinion issued in 1995 ("1995 decision"). J.A. 366-81. In that opinion, Hall was assigned a residual functional capacity ("RFC") of being able to lift a maximum of 20 pounds, and 10 pounds frequently, and being able to stand and walk for up to four hours in an eight-hour workday. The district court affirmed that decision in 1997. J.A. 387-405.

Our case begins when Hall filed another application for benefits on May 15, 1996, alleging an onset date of February 20, 1992. A different ALJ was assigned to this application, and he has handled Hall's claim since that time. The ALJ correctly determined that Hall's request for benefits was barred by res judicata for the period covered by the previous denial of benefits, 1992 to September 15, 1995. Following another hearing, the ALJ denied Hall benefits for the remaining period in a decision dated April 20, 1998 ("1998 decision"). J.A. 18-29. After the Appeals Council affirmed the ALJ's determination, Hall sought review in the district court. While the case was pending, however, the Commissioner filed a motion for remand, which the district court granted. J.A. 409. The Appeals Council sent the case back to the ALJ. J.A. 415-16. Hall returned to work

in August 1999.[1]  Therefore, on remand, Hall requested benefits for a closed period running from September 16, 1995 to August 1, 1999.

Hall was 36 at the time he filed the current application in 1996.  He has an eleventh-grade education and vocational training, and had been employed as a heavy equipment operator and a manual laborer in the strip-mining industry.  Hall claimed disability due to a variety of ailments. He complained of back and leg pain due to herniated discs and a back injury in 1992, knee pain due to an injury, pneumoconiosis ("black lung disease") brought about from his work, and anxiety and depression resulting from his injuries.

Dr. Caudill is Hall's treating physician, and has treated Hall since 1982. J.A. 157.  His notes, while difficult to decipher, indicate that he treated Hall for back pain approximately twenty-five times between July 1995 and August 1997 and prescribed medication to ease Hall's pain.  J.A. 126-43; 206-21.  On October 3, 1997, Dr. Caudill wrote a letter summarizing Hall's ailments.  J.A. 216. Dr. Caudill explained in greater detail Hall's various ailments: severe low back pain due to multiple-level degenerative lumbar disease, two herniated discs, and surgery; severe pain due to a torn anterior cruciate ligament in the left knee; marked depression and anxiety due to chronic pain and physical debilitation; hearing loss; and black lung disease.  *Ibid.*  Dr. Caudill concluded that these conditions "disable[d] Mr. Hall from all gainful employment since September 1, 1996, up to the present and for the foreseeable future."  *Ibid.*  In April 1998, he wrote an addendum to this letter, stating that his conclusions were based on personal examination and medical testing of Hall.  J.A.

---

[1]Though the ALJ's 2002 opinion refers to Hall returning to work in 1998, J.A. 288, our review of the record indicates he did so in 1999.  *See* J.A. 325-31 (August 9, 2002 hearing).

222-24. According to the doctor, testing and observation revealed that the claimant has sensory loss, atrophy, diminished reflexes, decreased muscle strength and spasm, all of which had steadily worsened over the past six years.

Dr. Caudill also submitted two medical reports. He attached one to the October 3rd letter, J.A. 225-28, and he had filled out another report on February 14, 1997, J.A. 157-60. The two reports are nearly identical, with the marked advantage that the October report is typed. *Compare ibid. with* J.A. 225-28. In these reports, he opined that Hall could *lift* a maximum of zero to five pounds occasionally or frequently; could *sit* for two to three hours in an eight-hour day, and without interruption for one to two hours; and could *stand* two to three hours in an eight-hour day, and without interruption for an hour or less. J.A. 158, 226. For ease of reference, we refer to this recommendation as the "lifting/sitting/standing restriction." Dr. Caudill also stated that Hall should never climb, stoop, crouch, kneel, or crawl; but that he could occasionally balance. J.A. 159, 227. According to the doctor, Hall's impairments limited his ability to reach, push, pull, or hear. *Ibid.* Finally, Dr. Caudill determined that Hall should be restricted from heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. *Ibid.*

Other doctors evaluated Hall and submitted reports. In 1989, Dr. Phillip Tibbs performed back surgery on Hall following a work-related accident. J.A. 115. In November 1995, Hall returned to Dr. Tibbs complaining of back and leg pain. Dr. Tibbs noted that Hall had poor range of motion in his lower back, that Hall's deep tendon reflexes were diminished in his lower extremities, and that Hall had extremely tight hamstrings causing increased pain in the lower extremities. Dr. Tibbs also noted that while an MRI showed no new evidence of disc herniation, Hall had multiple levels of disc

disease.  Dr. Tibbs determined that Hall would not benefit from surgery at that time, but that conservative treatment should be continued.

In 1993, Dr. James Templin reviewed Hall in connection with a workers' compensation claim.  J.A. 171-82.  He believed Hall could lift up to thirty pounds but would be unable to return to his previous work.  He further recommended that Hall enter a pain management program, but was concerned about Hall's ability to complete such a course.

In February 1996, Hall went to the hospital for a knee injury after a fall. J.A. 154.  In March 1996, Hall underwent arthroscopic surgery on his left knee, which was performed by Dr. Sam Labib. Dr. Labib diagnosed Hall with a left knee lateral meniscus tear along with a complete ACL rupture. J.A. 118-19.  The surgery successfully repaired the damage to Hall's knee.

In August 1996, Dr. Robert Strickmeyer, a state-agency physician, examined Hall and found that Hall had arthritis involving his back and his left knee.  J.A. 120-23.  The doctor noted that claimant's posture and gait were distorted, due to back pain.  He also found, however, that Hall had no evidence of active arthritis, pain, heat swelling, tenderness, or limited range of motion in any of his joints.  During the examination, Hall tried to stop him from moving his legs.  Dr. Strickmeyer was unsure whether Hall acted in response to pain or his familiarity with the test.  Still, he concluded that Hall's range of motion was limited  due to his experience of pain with movement.

In September 1997, Dr. Harold Bushey examined Hall and submitted a report to Hall's attorney.  J.A. 146-48.  He determined that Hall had difficulty moving his neck and that back tenderness in the lumbar spine limited his range of motion.  Dr. Bushey also noted that straightening his legs caused Hall pain and that his knees were enlarged.  Movement in the left knee was limited

because of pain. Dr. Bushey took x-rays that revealed a straightening of the curvature of the spine, some disc lipping, and narrowing of disc space. He also found that claimant had decreased pain sensation in his lower back and legs, with no pain sensation in the left leg. Finally, Dr. Bushey noted that Hall's reflexes were normal except for an absent left knee jerk. Dr. Bushey diagnosed Hall with chronic black lung disease, a ruptured lumbar disc, suspected multiple disc degeneration, residual pain and nerve deficit, osteoarthritis of the spine, traumatic arthritis of the left knee and a history of cervical disc degeneration. Dr. Bushey opined that Hall was totally and permanently disabled.

On October 15, 1997, Dr. James Liesenring examined Hall at the request of the ALJ. J.A. 186-90. Dr. Leisenring determined Hall's low intelligence would "modestly impair[ ]" his ability to carry out instructions, though he would be capable of managing funds. *Id.* at 190. More important were Hall's depression and anxiety, which would "significantly compromise[ ]" his ability to respond to co-workers, supervisors, and a work environment. *Ibid.*

The ALJ conducted a hearing, during which Hall and a vocational expert testified. In his 1998 decision, the ALJ summarized the medical evidence and Hall's hearing testimony, addressing Hall's claims of physical and mental ailments. J.A. 18-29. In finding Hall not fully credible, the ALJ emphasized that he saw Hall straighten up and walk normally once he was outside the hearing room. *Id.* at 25. The ALJ denied Hall's request for benefits, finding Hall capable of lifting 20 pounds, 10 pounds frequently. *Ibid.* He also found Hall able to stand for up to four hours. *Id.* at 26. These were the same general limitations found by the first ALJ in the 1995 opinion. *Compare* J.A. 25-26 (1998 opinion) *with* J.A. 379 (1995 opinion).

As mentioned above, the district court reversed and remanded the case after the Commissioner filed a motion to that effect. J.A. 408 (district court order). The Appeals Council requested that the ALJ pay particular attention to certain discrepancies involving the ALJ's findings concerning Hall's mental impairments. J.A. 415. However, it also instructed the ALJ to "re-evaluate the entire record of evidence" and establish the correct RFC. J.A. 416.

On remand, Hall relied on the opinions of Dr. Leisenring and Dr. Caudill. J.A. 331. On September 30, 2002, Dr. Caudill submitted an affidavit that effectively reiterated his opinions from 1997. He averred that he prescribes a variety of medications for Hall, that he correctly described Hall's restrictions for the period from 1995 to 1999, and that he agreed with Dr. Leisenring's description of Hall's psychological limitations. J.A. 555-56. He also submitted his treatment notes and various test results for Hall that he had compiled since April 1998.

Pursuant to this remand, the ALJ held several administrative hearings from which three important facts emerged. First, Hall testified that he had returned to work, periodically working for coal companies as a grader since 1999. J.A. 327-28. Second, a medical expert, Dr. Doug McKeown, addressed Hall's psychological impairments. *See* J.A. 344-55 (hearing testimony). Based on his review of Dr. Caudill's treatment notes, Dr. McKeown found that Dr. Caudill was not treating Hall for severe depression, and, therefore, he disagreed with Dr. Leisenring. *See id.* at 346-48. Dr. McKeown concluded that Hall's psychological impairments did not preclude his working. *Id.* at 350-51. Third, during the vocational expert's testimony, Hall's attorney posed a hypothetical question to the vocational expert based on Dr. Caudill's lifting/sitting/standing restriction. J.A. 359.

When that set of limitations was combined with other restrictions previously identified by the ALJ, the vocational expert determined that no jobs would be available. *Ibid.*

The ALJ again denied Hall's claim on December 30, 2002. J.A. 288-96 (2002 decision). In his decision, the ALJ focused on only the mental aspects of Hall's claim. The ALJ credited Dr. McKeown's opinion over Dr. Leisenring's. *Id.* at 292. Specifically, the ALJ noted that Dr. Caudill prescribes "standard" doses of the anti-depressants Xanax and Wellbutrin, which were inconsistent with Dr. Leisenring's diagnosis of extreme, disabling depression. *Ibid.* The ALJ also rejected Dr. Caudill's diagnosis of extreme depression for the same reason. *Ibid.* He further discussed Hall's behavior at home, which consisted of preparing food, talking on the telephone, visiting people, watching television, and smoking. *Ibid.* That, coupled with Hall's change in gait after the last hearing, *see id.* at 291, informed the ALJ's decision to deny benefits.

The Appeals Council affirmed. Hall then filed a complaint in district court, challenging the weight given to Dr. Caudill and the sufficiency of the hypothetical posed to the vocational expert. The district court affirmed on the basis that the ALJ briefly addressed Dr. Caudill's opinion about Hall's physical limitations in the 2002 decision and that, in any event, any error in not addressing the issue was harmless because the ALJ in the first decision sufficiently explained his decision to reject Dr. Caudill's opinion. Hall has timely appealed.

## II

Before this court, claimant has raised two issues. First, he argues that the ALJ failed to follow the regulations regarding the treating-source opinions, such as Dr. Caudill's. Second, he asks

this court to find that the ALJ's decision is not supported by substantial evidence. Hall, however, failed to raise his second allegation of error before the district court. Therefore, we cannot consider it now.[2] *See Barner v. Pilkington N. Am.*, 399 F.3d 745, 749 (6th Cir. 2005) (reiterating that it is well-settled law in this circuit not to consider an issue not raised below); *Young v. Sec. of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990) (applying rule in Social Security context).

We turn then to the one issue before us: whether the ALJ properly rejected an opinion of Dr. Caudill, Hall's treating physician. This court had frequently noted that an ALJ can disregard a treating source's opinion, but only so long as the ALJ gives a "reasoned basis" for its decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2004). We recently extensively considered this issue in *Wilson v. Commissioner of Social Security,* 378 F.3d 541. An ALJ must give "'good reasons . . . for the weight . . . give[n]'" to an opinion from a treating source. *Id.* at 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). The reasons must draw on certain factors, specifically "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544; *see also Pasco v. Commissioner of Social Security*, No. 03-4358, 2005 WL 1506343, at *7 (6th Cir. June 23, 2005) (unpublished disposition). The ALJ's reasons must also be based on evidence in the record and "'be sufficiently

---

[2]Hall has abandoned the second allegation of error he raised before the district court by not raising it before this court. We thus cannot consider the sufficiency of the hypothetical given to the vocational expert. *E.g.*, *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In *Wilson*, we remanded a denial of Social Security benefits because an ALJ's failure to give "good reasons" is grounds for remand even if substantial evidence otherwise supports the ALJ's decision. *Ibid.* Section 404.1527(d) constitutes "an important procedural safeguard for claimants for disability benefits." *Id.* at 547 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). The provision of reasons also helps explain the outcome of an adverse ALJ decision to a claimant whose physician indicated he is disabled, and thus "'might be especially bewildered when told by an administrative bureaucracy that [he] is not . . . .'" *Id*. at 544 (quoting *Snell v. Apfel*, 177 F.3d at 134 (2d Cir. 1999)). It further assists the Appeals Council and the federal courts in conducting meaningful review. *Ibid.* (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see generally SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) (outlining principles of review of administrative decisions).

Under Social Security regulations, medical opinions are "judgments about the nature and severity of . . . impairment(s), including . . . symptoms, diagnosis and prognosis, what [one] can still do despite impairment, and [an individual's] physical or mental restrictions." § 404.1527(a)(2). A Social Security Ruling explains that a treating source will often have more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2. Though ALJs need not always address each opinion individually, they must be "aware that one or more of the opinions may be controlling while others

may not." *Ibid.* They therefore must use judgment in determining whether it is necessary to address each opinion separately. *Ibid.*

If an ALJ does not give good reasons for rejecting the opinion of a treating source, remand and reversal may not be required if the violation has only been *de minimis*. *Wilson*, 378 F.3d at 547. Our court has not yet defined the scope of the harmless error inquiry other than to note that it cannot mean only that the claimant "'had little chance of success on the merits anyway.'" *Id.* at 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)). However, in *Wilson*, we identified the following examples of circumstances that "may not warrant reversal": (1) "if a treating source's opinion is so *patently deficient* that the Commissioner could not possibly credit it;" (2) "if the Commissioner *adopts the opinion of the treating source* or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of § 1527(d)(2)–*the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation.*" *Id.* at 547 (emphases added); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (holding failure to address treating source's opinion harmless error when the ALJ adopted the treating source's recommendations).

Evaluated against these principles, the ALJ's 1998 and 2002 decisions fall short. While Dr. Caudill offered an opinion about all of Hall's impairments, Dr. Caudill was most familiar with the pain Hall experienced because of his back. The ALJ could not fairly decide to not address this key opinion of Dr. Caudill. Its importance is confirmed by the vocational expert at the 2002 hearing, who stated that if the lifting/sitting/standing restriction were added to other findings by the ALJ, Hall

could not find work. J.A. 359. The sheer volume of opinions regarding Hall's back pain[3] identifies

it as probably Hall's most disabling ailment, challenged only by his reports of depression and

anxiety. As Dr. Caudill's opinion was based on roughly fifteen years of evaluation, it was not "so

patently deficient" that no one could possible credit it. *Wilson*, 378 F.3d at 547. Given the

reasoning of Social Security Ruling 96-2p, the ALJ had to deal with Dr. Caudill's

lifting/sitting/standing restriction. 1996 WL 374188, at *2.

Our review of the 2002 and 1998 decisions reveals that the ALJ did not do so. In his 2002

decision, the ALJ never addressed any of Dr. Caudill's findings regarding Hall's physical

impairments, let alone the lifting/sitting/standing restriction. *See* J.A. 290-96. Except for recounting

his view of Hall's behavior at the 1998 hearing, *see id.* at 291, the ALJ did not address any evidence

regarding Hall's physical impairments.[4] The ALJ refers to Dr. Caudill only in the course of

discussing Hall's psychological impairments. As part of his explanation for choosing Dr.

McKeown's opinion of the psychological impairments over that of Dr. Leisenring, the ALJ cited Dr.

McKeown's use of Dr. Caudill's treatment notes to show that Hall was not being treated for extreme

depression or anxiety and that his condition therefore did not preclude all jobs. *Id.* at 292. As Dr.

---

[3]In addition to the opinion of Dr. Caudill, four other doctors (Drs. Bushey, Strickmeyer, Templin, and Tibbs) all opined on the degree to which Hall's back and leg pain was debilitating.

[4]The 2002 decision contains some indication that the ALJ may have felt bound by the previous 1998 decision not to address Hall's physical impairments. *See* J.A. 291 (discussing scope of remand). However, as both parties concede before this court, the ALJ was not bound by the previous 1998 decision. The district court had reversed the 1998 decision under sentence four of 42 U.S.C. § 405(g), J.A. 408, which requires "[i]mmediate entry of judgment (as opposed to entry of judgment after postremand agency proceedings have been completed and their results filed with the court)." *Shalala v. Schaefer*, 509 U.S. 292, 297 (1993). Furthermore, the Appeals Council had instructed the ALJ to reevaluate the entire record. J.A. 416.

Caudill had written that he agreed with Dr. Leisenring, the ALJ went on to state that "Dr. Caudill's notes *do not* support Mr. [sic] Leisenring's conclusions; Dr. Caudill opines that Mr. Hall was unable to work during the relevant period but again the objective treatment notes do not support such a conclusion." *Ibid.* Though the phrase after the semi-colon could refer to Dr. Caudill's overall conclusion that Hall was disabled, context dispels that interpretation. The relevant phrase is not even an entire sentence in a paragraph devoted to psychological evidence. Moreover, the "objective treatment notes" that the ALJ referenced "again" can only refer to the dosages Dr. Caudill was prescribing, which all dealt with psychological disorders.

Given that the ALJ discounted only Dr. Caudill's opinion regarding Hall's psychological impairments in his 2002 decision, we conclude that the ALJ erred in not addressing Dr. Caudill's opinion regarding Hall's back. As the decision does not address any physical restrictions, it cannot be said to directly assign weight to this opinion. Given the centrality of Hall's back pain to his claim for disability and Dr. Caudill's longstanding familiarity with that ailment, the ALJ should have addressed the opinion. Nor can we infer from the ALJ's rejection of Dr. Caudill's psychological opinions regarding Hall a rejection of Dr. Caudill's opinion regarding claimant's back problems. Back problems and depression are dramatically different medical issues. In addition, in the papers he submitted for the 1998 decision and the 2002 decision, Dr. Caudill noted that psychological testing performed by others conformed with his personal observations of Hall. *See* J.A. 223 (1998), 556 (2002). He did not rely on the opinions of other doctors in evaluating Hall's back pain. *See* J.A. 222 (1998), 555-56 (2002).

The error in not addressing Dr. Caudill's opinion in the 2002 decision would be harmless if the ALJ had provided "good reasons" for dismissing Dr. Caudill's opinion in the 1998 decision. Even when considering claims alleging violation of the treating-source rule, we continue to believe that "[w]hen 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)). If the ALJ's prior opinion adequately addressed Dr. Caudill's opinions, there is no need for him to duplicate his efforts. The 1998 opinion, however, also fails to adequately address Dr. Caudill's opinion.

The 1998 decision mentions Dr. Caudill's general diagnosis that Hall's back pain is quite debilitating. J.A. 21. However, though the opinion is mentioned, the ALJ's only analysis of that opinion is that Dr. Caudill determined that Hall was "unemployable, but, interestingly, only since September 1, 1996." J.A. 21. Use of a sarcastic adverb hardly constitutes a "good reason" for discounting Dr. Caudill's opinion.[5] Because the ALJ adopted an RFC inconsistent with Dr. Caudill's lifting/sitting/standing restriction, we can infer that he largely rejected the opinion. However, the opinion does not "'make clear'" why the ALJ assigned it so little weight. *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). Therefore, the ALJ also erred in the 1998 decision in not addressing Dr. Caudill's opinion.

_____

[5]For one thing, Dr. Caudill's opinion as to when Hall became disabled is a question involving the ultimate issue of disability. That is, it is an opinion on the one subject about which Dr. Caudill deserves no deference because it is a legal determination to be made by the ALJ. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

We nevertheless review the 1998 decision as well to see if the ALJ's failure to directly address Dr. Caudill's opinion was harmless error. *See id.* at 547 (leaving open the possibility of harmless error when an ALJ does not address a treating source opinion). Though the scope of the harmless error inquiry is still undetermined, *ibid.*, we take guidance from the *Wilson* court's suggestion that "a situation could arise where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Ibid.* As applied to this case, the ALJ could have met the goal of providing good reasons by either his analysis of Dr. Caudill's other opinions or his analysis of Hall's back problems in general. Such analyses would perhaps adequately address Dr. Caudill's opinion about Hall's back pain by indirectly attacking the "supportability" of the doctor's opinion, § 404.1527(d)(3), or the "consistency" of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, *see* § 404.1527(d)(2).[6] However, it is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard. We are reviewing the 1998 decision to see if it implicitly provides sufficient reasons for the rejection of Dr. Caudill's opinion regarding Hall's back, *see Wilson*, 378 F.3d at 544-45 (discussing purposes of treating-source regulations), not merely whether it indicates that the ALJ did reject Dr. Caudill's opinion.

---

[6]These two concerns are frequently implicated in evaluating a treating source's opinion, which can only be given controlling weight if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (quoting § 404.1527(d)(2)).

After reviewing the 1998 decision, we cannot conclude that the ALJ's reasoning meets the goal of § 1527(d)(2). We begin with the ALJ's analysis of Dr. Caudill's other opinions. The ALJ gave good reasons for rejecting other opinions given by Dr. Caudill. For example, he rejects Dr. Caudill's description of Hall as having knee pain, for two reasons. J.A. 21. First, Dr. Strickmeyer saw no indication of joint pain. Second, Dr. Caudill used the present tense in describing Hall's meniscus tear when it had been already repaired surgically. He rejects Dr. Caudill's diagnosis of black lung disease largely because the medical testing done by Dr. Bushey did not support the diagnosis of black lung disease. J.A. 22. He further rejects Dr. Caudill's psychological evaluations as exaggerations. According to the description Dr. Caudill gave, the ALJ imagines that Hall would have to be "in a vegetative state, unable to care for his basic personal needs." J.A. 23; *see also id.* at 22-24 (elaborating on reasons). The ALJ did not give weight to Dr. Caudill's passing reference to Hall suffering from hearing loss in February 1997.

The rejection of Dr. Caudill's other opinions does not necessarily indicate why the ALJ rejected the doctor's opinion about Hall's back. With the exception of the rejection of Dr. Caudill's opinion about Hall's injured knee, all of the other opinions the ALJ rejects deal with very different ailments. These opinions, especially the black lung and depression diagnoses, were in part based on testing and diagnoses made by specialists in those areas. Rejecting opinions based in part on those experts is substantially different than rejecting an opinion based primarily on personal observation. As to the ALJ's analysis in rejecting Dr. Caudill's opinion about Hall's knee, we are unsure that it is supported by substantial evidence. *See Wilson*, 378 F.3d at 546 (rejecting as unsupported by substantial evidence a possible interpretation of an ALJ's reason for rejecting a

treating source opinion). The ALJ rejects Dr. Caudill's opinion because he used the present tense to describe a ligament tear that had since been surgically repaired. J.A. 21. However, one would reasonably expect a knee injury to still cause nagging pain even after having been surgically repaired. Moreover, though the knee injury related to Hall's problems sitting or standing, it was not nearly as substantial a problem as Hall's back problems, which caused pain to radiate into his legs. J.A. 24.

More importantly, the ALJ did not reject all of Dr. Caudill's opinions. The ALJ adopted parts of Dr. Caudill's medical report in determining Hall's environmental restrictions. *See* J.A. 22 (noting that the results of tests regarding Hall's lung capacity and "Dr. Caudill's medical report dated February 14, 1997" were "incorporated" into the claimant's environmental restrictions); *compare* J.A. 26 (ALJ description of environmental restrictions) *with* J.A. 159 (Dr. Caudill's recommended environmental restrictions). The medical report also contained the lifting/sitting/standing restriction. Thus, even assuming that the provision of good reasons for rejecting a number of Dr. Caudill's opinions would implicitly serve as a sufficient basis for rejecting a separate opinion, we are faced with a different situation. In this case, the ALJ did not find Dr. Caudill totally unbelievable. Thus, we have difficulty inferring a reason for rejecting Dr. Caudill's opinion about Hall's back pain from the ALJ's other rejections. Therefore, the rejection of some of Dr. Caudill's opinions does not constitute a reason to reject Dr. Caudill's opinion regarding Hall's back.

Alternatively, the equivalent of good reasons for not adopting a treating source's opinion could perhaps be found in an ALJ's analysis of the ailment addressed by the opinion. That is, it is

possible that we could identify the reasons for rejecting Dr. Caudill's opinion regarding Hall's back problems from his analysis of Hall's back injuries generally. However, our review of the ALJ's discussion of Hall's back ailments does not elucidate the ALJ's reasons for rejecting Dr. Caudill's lifting/sitting/standing restriction. The ALJ simply listed the opinions of various doctors regarding Hall's back pain, none of which recommended the RFC ultimately adopted. J.A. 20-21. The ALJ then addressed Hall's other claimed ailments, J.A. 21-24, before discussing Hall's self-described complaints of pain and daily activities, J.A. 24-25. While he contrasts Hall's daily activities with Dr. Caudill's reports, it is clear from context that he is referring to Dr. Caudill's reports regarding Hall's depression and anxiety. J.A. 24. The ALJ then recounted Hall's statements about his exertional limits, all of which were consistent with Dr. Caudill's restrictions. J.A. 24-25. Thus, when in the next paragraph, the ALJ, "[i]n view of the medical and other evidence of record," determines Hall's lifting capacity and sets the RFC at light work, he does so without comparing *any* of the medical evidence about Hall's back problem. Because the ALJ's exposition does not evaluate the differing medical opinions regarding Hall's back, we are unable to identify the basis on which he rejected Dr. Caudill's lifting/sitting/standing restriction that led to his opinion receiving little to no weight.

Finally, the ALJ's conclusion does not reveal his reasons for dismissing Dr. Caudill's opinion. Before turning to the hypothetical given to the vocational expert, the ALJ offers the following summary: "[i]n short, nothing has really changed since the prior decision of September 15, 1995." *Ibid.* The ALJ who authored the 1995 opinion had rejected Dr. Caudill's opinion regarding Hall's ability to return to work. *See* J.A. 377 (rejecting Dr. Caudill's opinion as being

based on treatment notes that do not consistently show objective findings to support the conclusion).

However, a general conclusion that nothing has changed since that time is far too removed from the

question of Dr. Caudill's current opinion to pass muster under § 404.1527(d)(2). Again, context is

our primary guide. The ALJ's comment is made in the context of discussing Hall's depression and

anxiety. *See* J.A. 26. It also serves as the conclusion to the section. While it is possible the ALJ

meant to adopt the previous ALJ's opinion about Dr. Caudill's opinions, we believe it is

significantly more likely that he offered only general conclusions that Hall was psychologically and

perhaps also physically capable of working. These conclusions, which are only restatements of the

RFC, do not themselves serve as good reasons for rejecting Dr. Caudill's opinion. Two additional

reasons make it particularly unlikely that the ALJ meant to discredit Dr. Caudill in that sentence.

First, he expressly criticized other opinions of Dr. Caudill earlier in the 1998 decision. *See* J.A. 21-

24. If this concluding sentence was a sufficient basis for dismissing the opinion of Dr. Caudill

regarding Hall's back, we see no reason why it would not be sufficient for the other opinions which

he did address. Second, Dr. Caudill's opinion has changed since the previous hearing. Dr. Caudill

opined that Hall became totally disabled as of 1996, after the time considered in the 1995 decision.

J.A. 21 (1998 decision); *see also* J.A. 377 (discussing Dr. Caudill's opinion that Hall can perform

only some sedentary labor); J.A. 222 (Dr. Caudill noting steady increase in severity of symptoms).

It could also be that Dr. Caudill's treatment notes, the basis for the previous ALJ's finding, have

improved. The main problem, as this paragraph illustrates, is that we do not know. As such, we

cannot conclude that the 1998 decision meets the purpose of § 404.1527(d)(2), which is to provide

reasons that are clear to reviewing courts and the claimant as to why the treating source's opinion was given whatever weight it was assigned.

We therefore conclude that the ALJ erred in not addressing Dr. Caudill's opinion regarding Hall's back pain in his 2002 and 1998 decisions. Though the decision necessarily turns on the details of the ALJ's reasoning and the facts of the individual case, the ALJ's failure to address Dr. Caudill's opinion in this case cannot be described as harmless error. For these reasons, we **REVERSE** the judgment of the district court and **REMAND** the case to the Commissioner for further proceedings consistent with this opinion.