RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0096p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID BOWEN,

　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

COMMISSIONER OF SOCIAL SECURITY,

　　　　　　　*Defendant-Appellee.*

No. 06-5622

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 05-00168—Danny C. Reeves, District Judge.

Argued: January 30, 2007

Decided and Filed: March 9, 2007

Before: GILMAN and SUTTON, Circuit Judges; TARNOW, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Leonard J. Stayton, Inez, Kentucky, for Appellant. William Hogan, SOCIAL SECURITY ADMINISTRATION, OFFICE OF GENERAL COUNSEL, Atlanta, Georgia, for Appellee. **ON BRIEF:** Leonard J. Stayton, Inez, Kentucky, for Appellant. Haila Kleinman, Dennis R. Williams, Mary Ann Sloan, Roy Satterwhite, Natalie Jemison, Douglas Wilson, SOCIAL SECURITY ADMINISTRATION, OFFICE OF GENERAL COUNSEL, Atlanta, Georgia, for Appellee.

_____

## OPINION

_____

　　RONALD LEE GILMAN, Circuit Judge. In April of 2002, David Bowen applied for disability insurance benefits from the Social Security Administration (SSA). He claimed that he had become disabled due to both physical and mental conditions that rendered him incapable of working. During two hearings held before an Administrative Law Judge (ALJ), both Bowen and the Commissioner presented medical evidence related to Bowen's conditions. The ALJ ultimately concluded that Bowen was not entitled to disability benefits because he retained a sufficient residual functional capacity (RFC) to work. In so concluding, the ALJ credited the medical evidence that

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

Bowen was, at most, only moderately limited in his functional capabilities, and rejected without discussion the severe functional limitations that Bowen's treating psychologist ascribed to him.

After the SSA's Appeals Council denied Bowen's request for review, he filed suit in federal district court. The district court ruled in favor of the Commissioner. For the reasons set forth below, we **VACATE** the judgment of the district court with instructions to **REMAND** the case to the Commissioner for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.    Factual background

Bowen is presently 50 years old, has an eighth-grade education, and is married with two children. He worked for 21 years at a mining operation in Kentucky as a buggy operator and a prep-plant operator. In April of 1998, Bowen suffered a work-related injury to his back, aggravating a previous injury from 1996. Initially, he was able to continue working, but he claims that the injury worsened to the point where he had to cease work in September of 1998. He has not worked since that time and has experienced symptoms of depression.

Bowen filed his present application for disability insurance benefits in April of 2002, asserting that both physical and psychological conditions preclude him from working. On appeal, Bowen challenges only that portion of the ALJ's decision addressing his psychological condition. We will therefore limit our discussion to the facts relevant to that determination.

Bowen was first admitted to the Mountain Comprehensive Care Center (MCCC) in eastern Kentucky in July of 1999. He was referred to the mental-health unit for symptoms that included depression. Since that time, he has been evaluated by a number of psychologists and psychiatrists. These health professionals all diagnosed Bowen with some form of depression. Their particular diagnoses, however, varied significantly regarding the extent of Bowen's depression, his residual mental capabilities, the possibility that he suffered from other psychological impairments, and the possibility of his malingering.

The record on appeal includes the opinions of eight psychologists and psychiatrists: Dr. Jane Brake, Dr. Richard Cohen, Dr. James Dumas, Dr. Wayne Edwards, Dr. Robert Granacher, Dr. Dorothy Holean, Dr. Eric Johnson, and Dr. Lea Perritt. In addition, the ALJ identified Bowen's written treatment records from MCCC as a medical source. These records consist of notes taken during Bowen's periodic outpatient visits to MCCC and the results of his annual status examinations. The vast majority of these notes and examination records are signed by both Dr. Holean and a "Chris Caudill, B.S./M.H.A.," the latter not being further identified by the parties. As the Commissioner notes, Dr. Holean was Bowen's treating psychologist at MCCC. The record contains treatment notes signed jointly by Dr. Holean and Caudill beginning in July of 2000 and continuing through the end of the relevant record in 2003.

Bowen was also treated by Dr. Dumas, a psychiatrist at MCCC. The other medical sources listed above either examined Bowen or reviewed his records on behalf of the SSA pursuant to his disability claims. Most relevant to this appeal are the opinions of Drs. Dumas and Holean, who treated Bowen, and those of Drs. Brake and Cohen, who reviewed Bowen's records on behalf of the SSA. Their opinions form the basis of Bowen's principal claim of error.

Dr. Holean submitted an assessment in April of 2003 that found Bowen to possess a "poor" RFC regarding his ability to deal with stress, maintain attention or concentration, behave in an emotionally stable manner, and perform other essential workplace activities. After reviewing Bowen's record on behalf of the SSA in December of 2003, Dr. Cohen submitted an RFC assessment that appeared to agree with this bleak evaluation of Bowen's generally "poor" RFC.

Elsewhere on his evaluation, however, Dr. Cohen noted—paradoxically and without further explanation—that "there are no marked functional limitations." Dr. Cohen added that Bowen exhibited evidence of malingering on portions of his psychological testing. Drs. Edwards and Johnson both echoed these concerns of possible malingering.

In sharp contrast to the severe assessments of Drs. Cohen and Holean, Dr. Brake submitted an RFC assessment in November of 2002 that found Bowen's depression to only "moderately" limit his functional capabilities. Dr. Brake reviewed Bowen's medical records on behalf of the SSA and assessed him to be either "not significantly limited" or only "moderately limited" in all 20 categories included on the RFC chart that she completed. She further opined that Bowen was able to understand and recall material, maintain the mental effort needed to complete tasks, function in an object-focused setting, and handle routine situations.

Bowen's treating psychiatrist at MCCC, Dr. Dumas, submitted an evaluation of Bowen in April of 2003, but he did not assess Bowen's RFC specifically. Instead, Dr. Dumas's narrative psychiatric evaluation diagnosed Bowen with depression and an adjustment disorder. He concluded that Bowen's depression was "being fairly well-treated." Dr. Dumas also determined that Bowen "appears to have responded well to his current medication," his "cognition appears to be intact," his "judgment and insight appear to be reasonable," and his "mood was much improved."

Despite finding that Bowen's condition was "fairly well-treated," Dr. Dumas increased Bowen's dosage of Prozac for a trial period. Dr. Dumas also assigned Bowen a Global Assessment of Functioning (GAF) score of 60, indicating moderate impairment. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (explaining that a "GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).") (brackets and quotation marks omitted).

As noted above, the record consists of multiple other medical opinions that generally fall in line with either Dr. Brake's assessment or with that of Drs. Cohen and Holean. Because this appeal primarily raises a procedural issue, however, we will omit any detailed discussion of the remaining expert opinions.

## B.    Procedural background

The present litigation stems from Bowen's second application to the Commissioner for disability benefits. His first application claimed that he became disabled in September of 1998 due to back problems, right-leg pain, high blood pressure, nerves, depression, foot problems, and arthritis. An ALJ issued an unfavorable decision regarding that application, which was upheld by both the Appeals Council and the district court.

Following the final denial of his first application, Bowen filed his second application in April of 2002, asserting that his continued affliction with substantially the same conditions rendered him totally disabled. Because the SSA had already issued a final decision on his first application, the ALJ concluded that res judicata barred Bowen from claiming benefits for the period between September of 1998 and November of 1999, when the Appeals Council affirmed the denial of his first application. The ALJ thus considered Bowen's present application for benefits to cover only the period from November of 1999 through the date that his disability insurance coverage expired in December of 2003.

After a hearing, the ALJ denied Bowen's second application for benefits. The Appeals Council declined Bowen's request for review in April of 2005, which rendered the ALJ's decision the final decision of the Commissioner. Bowen subsequently filed suit in the United States District

Court for the Eastern District of Kentucky. The district court affirmed the Commissioner's denial of benefits to Bowen, and this timely appeal followed.

## II. ANALYSIS

### A.          Standard of review and legal framework

This court will uphold the Commissioner's decision if it is supported by substantial evidence and if the Commissioner applied the correct legal criteria. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004) (quoting *Connor v. United States Civil Service Commission*, 721 F.2d 1054, 1056 (6th Cir. 1983), for the principle that an agency's decision will be reversed upon a "showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.").

The ALJ's decision to deny disability benefits to Bowen followed the governing five-step inquiry outlined in 20 C.F.R. § 404.1520. First, the ALJ determined that Bowen was not currently performing gainful work. The ALJ next concluded that Bowen's depressive disorder amounted to a "severe" condition within the meaning of the regulations. Step three of the inquiry required the ALJ to determine whether Bowen's depression met or equaled the medical impairments listed in the regulations. If so, Bowen would have been presumed disabled without further inquiry. The ALJ determined that Bowen's depression did not meet the listed criteria, however, and Bowen's present appeal does not challenge that determination.

Steps four and five of the inquiry required an analysis of whether Bowen's limitations permitted him either to resume his past relevant work or to adjust to other jobs that exist in significant numbers in the national economy. In order to make these determinations, the ALJ had to evaluate the extent of Bowen's impairment. Bowen specifically challenges this aspect of the ALJ's decision. He argues both that the ALJ erred by failing to follow the SSA's procedural requirements and that the decision was not supported by substantial evidence.

### B.          The ALJ's failure to address the opinion of Bowen's treating psychologist

In order to make a determination under the fourth and fifth steps of the inquiry outlined above, the ALJ posed two hypothetical questions to a vocational expert (VE) trained to evaluate whether a claimant with a given RFC is capable of performing the various types of work available in the national economy. First, the ALJ posed a hypothetical based primarily on Dr. Brake's assessment of Bowen's abilities. This hypothetical claimant was said to be, at worst, "moderately" limited in his RFC. The VE determined that such a claimant could not return to Bowen's past work, but would be capable of making an adjustment to occupations that exist in significant numbers in the national economy. This hypothetical claimant would therefore not be entitled to receive disability insurance benefits.

Next, the ALJ posed a second hypothetical in which the claimant was said to be limited in the manner described by Dr. Cohen, that is, with a "poor" RFC. The ALJ made no mention of Dr. Holean's virtually identical assessment. Given these limitations, the VE concluded not only that such a hypothetical claimant would be unable to return to Bowen's past relevant work, but also that no jobs exist in the national economy that could accommodate a claimant so impaired. The VE

specifically emphasized that the combined effect of a "poor" ability to deal with stress, maintain attention and concentration, and behave in an emotionally stable manner would likely preclude employability. This second hypothetical claimant would therefore be entitled to receive disability insurance benefits based on the VE's opinion.

Bowen's eligibility for benefits essentially hinged on the determination of whether his mental impairments corresponded more closely with the first hypothetical claimant possessing only "moderate" limitations as described by Dr. Brake or with the second hypothetical claimant afflicted with the severe limitations described by Drs. Cohen and Holean. Required to choose between these two possibilities, the ALJ ultimately "d[id] not accept the severe limitations as assessed by Dr. Cohen" and instead adopted the "modest limitations" set forth by Dr. Brake.

The key problem with the ALJ's decision, however, is that it completely fails to acknowledge the expert opinion of Dr. Holean, Bowen's treating psychologist. Nowhere in the ALJ's 12-page opinion does the ALJ mention Dr. Holean's name, the fact that she treated Bowen for over three years, or the fact that she submitted an RFC assessment in this case that corresponds with the severe limitations assessed by Dr. Cohen. Dr. Holean's opinion is noted only in a long listing of medical records appended to the ALJ's decision, but any mention of her assessment is totally absent from the decision itself.

This court has frequently recognized that where "the opinion of a treating source is not accorded controlling weight, an ALJ *must* apply certain factors . . . in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (emphasis added). Specifically, § 404.1527(d) of the SSA's regulations prescribes that the ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. 20 C.F.R. § 404.1527(d). The regulation further assures claimants that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ's complete failure to mention Dr. Holean plainly violated the terms of § 1527(d)(2). This court held in *Wilson* that, because § 1527(d)(2) provides claimants with an "important procedural safeguard," the SSA was not free to relax or disregard the rule in an ad hoc fashion. 378 F.3d at 547. The *Wilson* court determined that the ALJ's failure to "give good reasons" for rejecting the opinion of the claimant's treating physician in that case required a remand because it violated the substantive protection afforded by the regulation. *Id*. at 546 (quotation marks omitted). In so holding, however, *Wilson* left open the possibility that a violation of § 1527(d)(2) might amount to harmless error in other situations, including "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id*. at 547. *Wilson* made clear, however, that the harmless-error inquiry required more than a showing that the claimant simply had little chance of winning on the merits. *Id*. at 546.

Two recent cases interpreting this harmless-error exception help to outline its contours. One is *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461-62 (6th Cir. 2005), where this court considered the Commissioner's argument that the ALJ's failure to directly address the conclusions of a treating physician amounted to harmless error. *Hall* involved a claimant who asserted total disability based on both physical and psychological impairments. *Id.* at 458. The ALJ addressed the opinion of Hall's treating physician in the course of discussing Hall's psychological impairment, but failed to address the physician's findings with regard to Hall's physical limitations. *Id*. at 463. Two particular aspects of the ALJ's decision troubled the court. First, the court emphasized that the ALJ's decision was inconsistent in that it accepted the treating physician's opinion in some respects but rejected it in others without explanation. *Id*. at 465. The court also noted that, although the ALJ

addressed other medical opinions related to Hall's physical limitations, none of them supported the specific RFC that the ALJ ultimately adopted. *Id*. at 465-66. Because the court was unable to discern the ALJ's reasons for the weight that he gave to the opinion of Hall's treating physician, the § 1527(d)(2) violation necessitated a remand. *Id*. at 467.

In contrast, this court in *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (per curiam), held that the ALJ's failure to abide by the letter of § 1527(d)(2) amounted to harmless error. The court determined that the ALJ's analysis satisfied the goals of § 1527(d)(2) by "indirectly attacking" the treating physicians' opinions. *Id* at 471. In *Nelson*, the ALJ had briefly referred to the opinions of two of the claimant's treating physicians, but had not fully explained why he accorded them little weight as required by § 1527(d)(2). *Id* at 470. Nevertheless, the court held that those brief references, which arose in the context of discussing a multitude of contrary medical evidence, met the regulatory goal of addressing the opinions of the treating sources as well as their inconsistency with the record as a whole. *Id*. at 472.

We first note that the ALJ's adoption in this case of an assessment contrary to Dr. Holean's opinion—without even addressing her involvement—transgressed § 1527(d)(2) beyond even the violations in *Hall*, *Nelson*, and *Wilson*, where the treating source was at least mentioned. This fact alone counsels strongly in favor of a remand. Neither we nor Bowen can even be certain that the ALJ was aware that Dr. Holean's assessment represented that of a treating source. In fact, the conspicuous absence of any reference to her as such tends to indicate the contrary. The ALJ specifically acknowledged Dr. Cohen's virtually identical RFC assessment at several points in the hearing and in his opinion, but failed to mention that the psychologist who treated Bowen for over three years happened to agree with it.

Nonetheless, the Commissioner argues that the violation of § 1527(d)(2) was harmless because the ALJ met the goals of the rule by discussing Bowen's psychological condition generally and by explicitly deciding to adopt Dr. Brake's assessment over Dr. Cohen's. In other words, the ALJ allegedly met the goals of § 1527(d)(2) insofar as he rejected Dr. Holean's RFC assessment through the proxy of Dr. Cohen's similar opinion. We find this argument unpersuasive for several reasons.

First, although we agree that the ALJ might have discounted Dr. Holean's opinion for the same reason that he discounted Dr. Cohen's, another possibility is that the ALJ simply overlooked Dr. Holean's opinion altogether. In addition, the ALJ's opinion explains only that he "d[id] not find such severe restrictions [described by Dr. Cohen] to be warranted *based upon the rationale provided by Dr. Cohen*." (Emphasis added.) This statement indicates that the ALJ might have rejected Dr. Cohen's assessment as a matter of credibility, perhaps based upon Dr. Cohen's self-contradictory notation that "there are no marked functional limitations." In discrediting Dr. Cohen's opinion, the ALJ also expressed concern over Bowen's possible malingering in his SSA examinations and subjective complaints, as suggested by several sources. We are unsure, however, whether the ALJ drew the additional conclusion that Bowen malingered in the course of his three-year treating relationship with Dr. Holean, given the ALJ's silence on that issue.

Moreover, the ALJ's rationale for crediting Dr. Brake's assessment raises an additional concern. The ALJ adopted Dr. Brake's assessment in part because he found it to be supported by Bowen's treatment records at MCCC. Those records, the ALJ concluded, "offer[] the most accurate reflection of [Bowen's] mental status and . . . [are] generally benign." The ALJ failed to note, however, that the vast majority of those treatment records are initialed by none other than Dr. Holean. This presents a problem of inconsistency similar to that found in *Hall* because the ALJ lent credence to Dr. Holean in one respect (albeit unwittingly), but then ignored her RFC assessment without explanation.

On the one hand, this could be seen as "indirectly attacking" the supportability of Dr. Holean's opinion on the basis that Dr. Holean's treatment records are inconsistent with her RFC assessment. *See Nelson*, 195 F. App'x at 471. Alternatively, it might be viewed as further evidence that the ALJ simply overlooked Dr. Holean's opinion. We see no rational explanation for crediting Dr. Holean's treatment notes as "accurate," but then discounting her RFC assessment without the slightest mention. The problem, again, is that we just do not know why the ALJ disregarded Dr. Holean's RFC assessment, and the goals of § 1527(d)(2) cannot be satisfied by bald speculation.

Attempting to salvage this omission, the Commissioner highlights the fact that the ALJ relied heavily on the opinion of Dr. Dumas, Bowen's treating psychiatrist, in choosing to adopt Dr. Brake's assessment over Dr. Cohen's. Properly addressing or adopting one treating physician's opinion, however, does not obviate the need to comply with § 1527(d)(2) in addressing the opinions of other treating sources that reach contrary conclusions. *See Sharp v. Barnhart*, 152 F. App'x 503, 508 (6th Cir. 2005) (remanding a claim to the Commissioner where "the ALJ satisfied these [§ 1527(d)(2)] procedural requirements with respect to the opinions of some of [the claimant's] treating physicians but not with respect to others of them.") Moreover, exclusive reliance on Dr. Dumas's opinion is misplaced because he did not submit an RFC assessment of Bowen. Although Dr. Dumas's general findings are certainly relevant considerations, they do not speak directly to what became the heart of this dispute: whether Bowen's RFC permitted him to work despite his psychological impairment.

This case is unlike *Nelson* because there is not even a passing reference to Dr. Holean's opinion in the ALJ's decision that allows us to infer that the ALJ intended to indirectly attack it. In *Nelson*, this court cautioned that the scenario there represented the "rare case" in which a § 1527(d)(2) violation was deemed harmless because the ALJ's analysis met the goal, but not the letter, of the rule. 195 F. App'x at 472. Although *Wilson* contemplated other scenarios in which a § 1527(d)(2) violation might be considered harmless, such as where the treating physician's opinion is "patently deficient" or where the ALJ adopts a treating source's opinion without discussion, that is not the situation here. *See Wilson*, 378 F.3d at 547.

We are not unsympathetic to the plight of an ALJ confronted, as in this case, with the opinions of eight different psychological medical sources, in addition to multiple opinions relating to alleged physical impairments. Nevertheless, invoking the harmless-error exception here—where the ALJ entirely failed to address the primary treating source's presumptively supportable opinion—plainly risks having the exception swallow up the rule. A remand is therefore necessary so that the ALJ may fully consider and address Dr. Holean's opinion consistent with § 1527(d)(2).

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court with instructions to **REMAND** the case to the Commissioner for further proceedings consistent with this opinion.